Morning, first case today is number 24-2613, Tammy Nieling against Dong Feng Fook and William Poston.  Morning, your honor. I please the court, Terry Roberts for Tammy Nieling, the appellant. This is a maritime case where the magistrate granted some benefits to the seaman, but denied claims for maintenance, partial claims for cure, punitive damages and attorney's fees, and specifically barred all future care, even though the only testifying physician said that surgery is likely needed. And even though the defendant agreed that there was a serious injury. As my friend on the other side did not address the future care and punitive damages issues in the briefs, in the answer brief, and as our time is short, I'll try and focus on the remaining issues as much as possible unless the court has questions. The first issue that I think sort of infects all the others and informs all the others, and that's why it was first in the briefs is the issue of maximum medical improvement or maximum medical care, I'll refer to it as MMI. Most of the error in the case can be traced to the magistrate, deciding that because she did not see there being evidence of MMI one way or the other, that this was basically a presumptive finding of MMI against the plaintiff. Whereas in Adeland, which is a First Circuit case from 2022, that's almost precisely on point, that court was clear that the burden is on the ship owner to show that no further recovery is reasonable. The evidence of MMI has to be conclusive and unequivocal, and the district court shifts the burden wrongfully to the seaman when they find there's either no evidence or not equivocal evidence that the person is at MMI. Just to be clear, Fook is out of the case as to maintenance and cure, correct? No, Your Honor, maintenance and cure is at issue in the case. The Jones Act, it's not just Poston? Well, he's vicariously responsible, so I, yes. Who's vicariously responsible? Poston is the ship owner, Fook was the captain. Right, Poston is on the hook potentially, but why is Fook on the hook? Well, I just believe that through the vicarious liability, you'd still have to have the defendant who committed the act. But yes, Mr. Poston would be the defendant who's paying, and I don't think it makes too much of a difference to the plaintiff which defendant. Well, it makes a big difference to Mr. Fook. I mean, does he owe the money or not? And if he does owe, if we rule your way a maintenance cure, what case support do you have for Fook being obliged? Well, Mr. Fook was the negligent party in the Jones Act portion, which isn't challenged by either party, but it was his negligence that Mr. Poston is then vicariously responsible for. So I still believe he's a putative defendant, but Mr. Poston would be the defendant who's paying. Mr. Poston, the ship owner. That was what I was trying to establish. Mr. Fook is his employee and the ship captain who had, he was the real man who was responsible and present, but Mr. Poston is a silent owner who is ultimately. I take it that rather than your objection, what you understood on MMI and less. Open, obviously. Well, that would be a partial. I did suggest that in the brief that at the very least that this court could say, look, maritime cases are always supposed to be serial in nature. You can bring five, six, seven complaints. As things come due, you can ask for new benefits. But I do believe that when you look at Dr. Fletcher's testimony, who's the hand surgeon, he was the only medical expert to testify below. He was crystal clear that he is ramping up care, going from least serious intervention to most serious, and that Ms. Kneeling had a serious injury and fracture, and that he was recommending one last shot. He called it the SS last hope. He said, we've been doing injections, increasing range of motion through therapy after the injections. She's improving incrementally every time. We want to try one more and see how close we can get to the goal line. But this is probably our last shot and surgery is next. So I certainly think that the claim for surgery was ripe, that surgery hasn't happened. Dr. Fletcher's never been paid to this day. And so- Right, but the crux of your disagreement about cure, not talking about what the doctor said, but in terms of legally, is with an interpretation of the district court's ruling that would preclude future cure. And as you say, if these can be serial cases, then that shouldn't be read as foreclosing if there wind up being future cure expenses. I understand why you say that, Your Honor, but if we were to file, say, a second serial suit right now and say, we would like injections last, both the SS last hope injection and the surgery, we would be basically saying what we had already teed up at the time of trial is that he wants that now, but the employer had never seen fit to pay for her to go to Dr. Fletcher, has still never paid Dr. Fletcher. So we're still asking for the care that was right at the time of trial. So I think it would be an incomplete and improper remedy to just say, we'll just file another lawsuit because we've already had Dr. Fletcher's testify. Well, but his testimony didn't carry the day because he specifically testified he could not render an opinion about whether your client's finger could further improve. I would disagree with that, Your Honor. I think the key, of course, reading all of Dr. Fletcher's testimony is important. I think the key pages are at the joint appendix, pages 471 to 482. He's clear that he would not be recommending this care if he did not think that it would improve function, that it was not just for pain, that it's improving range of motion and function, and that one last injection to avoid surgery was possible, but that surgery was the most likely outcome, but he had to see her back and they were going to try the one, the SS Last Hope injection, but that surgery was likely. In your brief, you said Kneeling Quote has a permanent injury that will never be fully healed and will always have pain and loss of range of motion. It seems to me that makes it clear she has reached MMI and any further treatment is just going to be palliative. I understand why you'd say that, Your Honor, but that's not correct. If someone breaks their back or breaks their leg or shatters their kneecap, they're always going to have some permanent impairment, but that doesn't mean that you don't give them surgery. That's absolutely care that you need to do. You need to get them to maximum medical improvement, and I believe it's at page 478. She had not, that's the quote. You can search those words. She had not reached MMI. The last time he saw her and improvement is still possible. So maximum medical improvement doesn't mean that you're not going to have a permanent injury at the end. It means we can get you better. We can restore some function or ability, and maybe we can get you from 50% to 80% or 99%, but you- Can you get maintenance when you're not sure recovering, but you're out working voluntarily a month after your injury? Right, this is the most heated of the, although I think the attorney's fees and punitives are maybe more pressing, but so the maintenance cases are a bit fact-intensive and all over the place. What does this mean with incapacity, that you're incapacitated to do the work of the seaman? She clearly worked some time, although she only worked eight months out of, I believe, 20. She asked for maintenance, I think it was three months post-accident. She said, I'm not working. I'm in desperate straits. I need maintenance. So there are clearly periods of unemployment, but incapacity means that you have some incapacity, not that you are completely incapacitated. And how do we know that? We know that from Yates and from the Supreme Court opinions in Vaughn. Vaughn has that quote about it would be a sorry day if someone is forced to go back out of financial necessity. So, and we had clear testimony here. Of course, I went back to work. I can't even make a fist. And Dr. Fletcher said she can't make a fist. There's pain, there's difficulty. I'm a cook. I work with my hands. One hand is pretty rough. I muddle through, and I've done this out of financial necessity. So that brings us to Yates and Vaughn. You do not have to be lying coma-like in a bed. The burden is virtually automatic that they are wards of the court seaman. And the burden is feather light, or it's called different things, but extremely light, feather light, virtually automatic that maintenance turns on. When we say, well, how long does this go on? What I think the case law contemplates is that the employer is supposed to turn on medical care and basically put you through what you can do and get you to MMI. And at that point, when you're there at MMI, they're forever relieved of the maximum medical improvement burden. Here, we're four years post-accident, 9,000-something dollars in bills were ordered to be paid. There had only ever been offered 2,000 or 2,750 if they were willing to settle the entire case. But Dr. Fletcher, one of his bills was $5,600. That's never been paid. She's never been put through- Fletcher was hired after the case began, right? Yes, Your Honor. But he's the one that's the hand surgeon. Should we, does it matter? I don't think so, Your Honor. Is there any case law that indicates that once a case is filed and you're in the adversarial process, the calculus about what maintenance needs to be paid, how much needs to be paid changes? No, I think- Because the parties are disputing, it's a disputed point. I think the case law is clear that there's an unequivocal, I'm sorry, I see my time is- Keep going. I think the case law is clear that you have to show maximum medical improvement unequivocally. Dr. Fletcher may have come in later, but he provided the only treatment really, I mean, other than the early minor- But there's also a case law that says maintenance ends when somebody goes back to work, as long as it's voluntary. If they go back to work under dire need or against their will, just out of necessity, then you win. If they go back to work voluntarily and they're okay to work, there's case law that says you don't get maintenance, correct? Right, when you read those cases, what they say is, yes. The dividing line is if you go back to work out of financial necessity, which is what we have here, unrebutted claim that she went to work out of financial necessity, that that is under springboard press, under Vaughn and Yates, the main ones, that you get maintenance. If you were able to go back to work completely unencumbered, like say the Woodson versus Rentrop, Tugs Incorporated, that man said, I just need some Tylenol and I can head right back to work. So he's basically at maximum medical improvement because Tylenol is just a managed pain. So if you've reached maximum medical improvement and you can just go back to work unencumbered, and even if you have some minor injury, you can still... All right, let's touch on attorney's fees and punies. And the punitive damages.  Right, those are... There seems to be an important distinction here between the demands that were made in 2021 versus 2023. Can you elaborate on that? Sure, I think the district court magistrate acting as judge, I think she denied care for two reasons when you read the opinion. The first was her wrong view of maximum medical improvement. She says, well, of course there's a good faith dispute about maximum medical improvement because she went back to work and so this was not something worthy of attorney fees or punitive damages because she wasn't at MMI. The law clearly says she was not at MMI. So that reason goes out. I read it a little differently. I thought it was more that an offer was made and a demand to let me see the bills and the bills were not forthcoming. So that I thought you were going to argue that really the bad faith here had to do with Fletcher's bills and Fletcher's treatment, not in the 2023 time frame, not the 2021 time frame. That's the second reason that she says there's something going on here, which was they presented bills and then you never got back to us. Right, so how can that be bad faith? That can't be on that. It wouldn't be. When someone says I'll offer you 2,500 or whatever, 2,700 to settle the case and I'm willing to pay your bills, let me know what your bills are and the bills aren't forthcoming. That's not bad faith. That's easy. I agree, Your Honor. So where's the bad faith? When does the bad faith come in? If that's not the bad faith, when does it arise and how? That would be if that happened, but that's not what happened. We're saying that the judge was wrong in her factual findings there. At DE 25, which is the initial brief, pages 46 through 51, I walk you through the timeline completely. She had asked for maintenance and cure in October. There were outstanding medical and they had these bills for at least a year. Mr. Poston agreed on the witness stand. I was emailed three or four times about this and I definitely received three of those emails, but at some point I just would send them onto my attorney. He read Dr. Fletcher's recommendations and said, you know, we're in litigation. I'm just not gonna pay. I'm saying this to my attorney. If they wanna settle the whole case for 2,700 or 500, that's fine. And the three-part test that's in the initial brief, Laxmanson investigating claim, denying benefits because someone hired a lawyer or because they refused settlement or a failure to reinstate benefits after you've read a bona fide diagnosis that someone needs some help. Those are all met here. There's a bona fide diagnosis when it's the doctor that was hired for purposes of litigation. Because why should, I'm not sure I understand the wisdom in a rule that says that a defendant in litigation has to take at face value a diagnosis and an estimate of charges issued by a doctor who's been hired by a lawyer during litigation and for litigation. In a slip and fall case, in a battle of experts, Your Honor, which I think a lot of us have dealt with over the years, you may be right. In maritime cases where the seaman is the word of the court, the rule is that the evidence of MMI has to be unequivocal. Basically, if you have three doctors lined up and one says this person needs something, that's usually a basis to find not at MMI. The evidence has to be clear. Here, the magistrate accepted Dr. Fletcher. There's no, I find Dr. Fletcher's opinion suspect or I reject it in part or in total or anything like that. Dr. Fletcher was the only doctor who testified and everyone took what he said as gospel. Right, and that's why you won the case. And it was a good faith dispute, not a bad faith dispute. Well, even if the other minds could have disagreed, but you prevailed. So why do attorneys fees impurities damages? Because they had that opinion and Mr. Poston had personally read it and just said, I'm still not gonna pay, we're in litigation. And that's classic hiring a lawyer or refusing to settle. That's one of the three bases for punitives under, these are Fifth Circuit and they're only, I recognize they're not binding on this court, but I think that lays out a better way of sifting through this than just vague words like willful and wanton or the vague words that we get for what triggers punitive damages. These three ways of looking at what the employer has done wrong or the ship owner has done wrong are great. They get specific about what's bad faith. And when someone says, look, I know this doctor says you need shots and you need a $16,000 surgery. We're in litigation, I'm just not gonna pay it. Mr. Poston got on the stand at the trial and said, I know there's bills outstanding. I know I have to pay them, fine, I'll pay them. Of course, he still hasn't paid them even though they've dropped the cross appeal. But, and so that's why she's not able to treat. She still has no ability. Thank you. Did you reserve time for rebuttal, Mr. Rob? I did reserve five minutes, but if you need to modify it because of- No, that's fine. We'll hear from Mr. Walsh. Thank you. May it please the court. The fundamental flaw in their argument is that they fail to recognize that there's really two components of a maintenance claim. The first part is you have to determine that you have a right to maintenance. Then once you determine you have a right to maintenance, then the issue becomes what's the duration? And that gets into the issue of MMI. In this case, when you're dealing with whether you have the right to maintenance, there's basically three things you gotta show. You gotta show an injury. You gotta show you're incapacitated to do seaman's work. And then you have to show that you had taken time to convalesce or wanted to take time to convalesce and weren't allowed to so that your injury could heal. And if you look at all the court decisions, whether it's a Supreme Court or the treatises, they all talk about the fact that the purpose of maintenance is to allow an injured seaman who's been incapacitated to go offshore, convalesce, and let their injuries heal. That establishes the right. Once you get the right, then the issue becomes MMI about how long you have. And the problem we have here is the judge's decision, when you actually go through it, she made determinations on two things. One, she was never incapacitated. And two, she never wanted or took time to convalesce. And so as a right, she had no right to maintenance. And that's why the court never even made a decision about MMI, because she didn't have to. Once she determined that there was no right to maintenance, the issue was done. Well, MMI still matters for cure. Yes, yes, but it may matter for cure. Now, the issue with cure is, and this was the issue on the letters back and forth with the lawyers. And because I wrote the letters, I remember what they were. The first letter we wrote was, recover the medical expenses. And the issue was, my guy had paid a bunch of things through Venmo. We thought everything was paid, it wasn't. We had offered to pay what wasn't paid. And then we never heard back from her. She then filed a lawsuit for negligence in Jones Act, no maintenance claim. Okay, and so we didn't follow up on the maintenance. Then they got a new lawyer, that lawyer went and got a doctor, and then they made a second demand. And in the second demand, which is what you're talking about, the plastic surgeon said he wanted to do two things. One, try to alleviate the injury with pressure, and two, deal with the scar. Okay, and we viewed that based on his records, that those were palliative cures, not curative. And so because they were palliative, and it's unfortunate that she has pain in his finger, and we don't begrudge anybody that. But the fact of the matter is, what he was trying to do was to relieve the pain she was having, the symptoms, okay, and to deal with the scar. And so that's why we had rejected the second request for cure payments, because we believe they were palliative. And the court in this case agreed with us. So even if we are wrong, because this court overturns it, you can't say we were unreasonable in saying that you didn't have a right to them because they were palliative, because you have a district court judge who made a decision on that. But going back to the first issue. I do want one more thing on this. So do you think we can read the magistrate judge's opinion, district court's opinion as like not making a finding on MMR, not resting on a finding or a shifting of the burden of proof or anything like that? No, and if you go to- No, we can't read it that way? No, because when you go to her decision, and you look at the facts, she goes through and she says, the plaintiff never took time off. The plaintiff never gave any hint of wanting to take time off. No, I'm asking specifically, can we read about the MMI finding? Time off has to do with maintenance. I'm asking specifically about MMI. So in MMI, what the court found was that there was no evidence to establish where MMI had occurred by the defendant or by the plaintiff. But she found that the evidence presented by their doctor showed that they were palliative cures he was seeking, not- Where in the record do I find that? That is in the court's decision. If you give me one second, Your Honor. I think on page 25, 26 of the appendix- Decision where it starts with a paragraph that says further. Hang on. I'm at appendix 25, 26. I do not see further. The page of the opinion or- That's the page of the opinion. I don't- Okay, I'm going to have the appendix- You don't have the page of the opinion that's page 25. Okay. Further. On page 26, which is page 32. Okay. Yeah, and if you look at the last sentence, that paragraph, the court says, the court concludes from the bulk of the evidence that further treatment would be palliative as opposed to curative. Plaintiff presented no evidence of any medical visits to treatment since our last appointment. But that's evidence of actual medical visits to treatment. It's not about future medical visits or treatment. And the topic sentence of this paragraph-  On 26th opinion, appendix 32, is there's no clear finding of MMI or absence of MMI on this record. So how could that foreclose future cure? Your Honor, I believe it's being foreclosed because the treatment that he is seeking is palliative, not curative. So even if they were to say- Being sought in this lawsuit. Right. Yes. No, that doesn't affect future cure. It helps you prevail now on cure that supports the decision that was made on cure, but that doesn't speak to what might happen in the future. And isn't one of the hazards of admiralty law? If you're a defendant, like your client, that health changes, things happen, and people might keep coming back at you if they can file a claim for a cure, they need cure. Well, all I can deal with what's happened in this case. And in this case, what the court found was testimony from the- I'm assuming for a minute that you win here. We're talking about future cure. And how we write, we are asking, are you trying to ask us to write an opinion that precludes the chance for future cure, or are you just asking us to affirm what the district court did here with respect to cure based on the proofs presented to it? I think that you can do both because the court made it clear that based on the testimony of this doctor, what he was trying to do in the future and what he was explaining what he was going to do. And remember, those damages were allowed under the Jones Act claim, okay? They weren't- I mean, so to the extent that medical injuries were not allowed under the cure, she allowed medical under the cure, okay? But because the Jones Act covered that, she said it's duplicative, and so there was no- So all those damages were covered under the Jones Act claim. And I believe the court said that she allowed the- All right, what case support do you have for the notion that when you prevail on cure, that that precludes sort of res judicata for any other future case that might be brought for cure? I do not know a case off the top of my head. All right. I don't either. That's why I think- I don't think you can have both. I think you can have- Well, I think- You could have a vindication here on cure from what the trial court did, but I don't know how we could speak to future cure on that. Well, the only thing I could say is- And then part of the problem, I think, if you could address the question I asked your friend on the other side, I asked him if Dr. Fletcher testified at trial that he could not render an opinion about whether Neeling's finger could further improve. Yeah. What's your response to that? You know, there are two things about this. One, he indicated that the injury was permanent and that was key, okay? And he indicated that it was permanent. She was always gonna have pain in it. They could do things to address the symptoms, okay? And that's what they were taught. The two things he said he could do was he could address the symptoms and that he could address the scar, okay? But what he did say was the injury was permanent. Yeah, but your friend on the other side pointed out there are plenty of injuries where there's going to be something permanent, but you can get closer, not to 100%. Maybe you can get to 75% or 90 or 95 or 99%. The fact that there will be a permanent injury doesn't mean you've reached MMI. Well, I think it does, Your Honor, because when you look at the definition of MMI, it's when you're either cured or you've reached a permanent status of MMI. That presumes that there are no future breakthroughs in medicine. Your Honor, I can't predict what's gonna happen in the future. Exactly, that's why there might be- There's never a termination on a claim for cure. I don't see how that rule could, I mean, again- Isn't that admiralty law? I mean, isn't that what we're dealing with? That may be, but I don't know the issue. I just don't know the issue. I haven't thought that through and found a case on that point. But I will say, based on what the court said with this doctor, okay, his testimony and what he was going to do and try to do, what she did allow as part of the damages for the Jones Act claim. Do you need, does someone need to invoke the magic language MMI? I mean, if a doctor says, I can't do anything more for you except for palliative care, is that tantamount to MMI? Well, again, Your Honor, I agree with you because there are no magic words. And the problem is that when you look at the actual medical records in this case, okay, it was very clear that the injury had healed, okay? And in fact, it healed like any injury break about four months after the fact. So the doctor said that it healed and it healed well, okay? The problem she had was there was some residual problems with the injury that caused her pain, okay? And he wanted to try to figure out a way to do that. And she had some scarring that he wanted to deal with. Okay, so that's, I mean- When it's pain and scarring, you're dealing with palliative and cosmetic. Exactly. Not cure. Not cure. And so, I mean, there's just no evidence in this case that there is curative. And maybe there could be, I don't know. I'm not a doctor, but I can't, all I can say is based on what this doctor said at the trial and what the judge relied on this doctor, that the cure that he was proposing was palliative. Okay, isn't the burden of proof though on the owner dependent to prove, you know, MMI? Like the, as a matter of burden of proof, if there's equipoise here, there's no clear finding of MMI or access to MMI, then the burden of proof hasn't been satisfied. Well, Your Honor, we did, we used his testimony to show that the injury was permanent and that the cure they wanted was palliative, not curative. But the court ultimately found you hadn't satisfied that burden of proof. But she did find that the cure that was being proposed here was palliative. And once you establish that it's palliative, that's the issue. And the bigger point here is they never addressed the first issue about whether she has a right to maintenance in the first place. And that's an important point because by not addressing that, the court's opinion on that has not been attacked. And so this court should find as a matter of law that that maintenance issue goes away because they have to go after the incapacity issue and the failure to take convalescence or an opportunity to convalescence. And so MMI for the maintenance is irrelevant completely. In terms of the cure and future, again, I haven't researched that issue. My understanding based on what this judge did was she was relying on the doctor and found that what he was proposing was palliative. And if it is palliative, then she has reached MMI for the cure. Now, again, the section we were citing was the maintenance section.  And then you want to address attorney's fees and punitives? Yes. Again, and what the judge had found, we had sent a letter to the plaintiff when she first raised this issue and we said, we'll pay $2,000 because it was a dispute about whether she was paid and we never heard back from her. Then they filed the lawsuit. There was no claim for maintenance or cure. It was just a maintenance negligence claim. And so we didn't think there was any obligation at that point. Then they got a new lawyer, they got a new doctor, and then they sent the letter demanding that Dr. Fletcher's stuff for the plastic surgery be provided. And we contested it because we said that that was palliative, not curative. The judge found that our actions were reasonable in the circumstances. She agreed with us, at least on the second part, that the Dr. Fletcher stuff was palliative. And so the fact that we were reasonable in our rejection of that negates any attorney's fees or punitive damages or anything extra there. What about the fact that the award was substantially higher than the offer? I'm not talking about the 25,000. For the pain, I'm talking about the, it was over 9,000, wasn't it? I believe the medical expenses, but again, that was under the Jones Act. And so she was providing future medical damages and medical damages. It's a different standard under the Jones Act for medical damages than it is under the maintenance and cure, because cure is only for curative, not palliative. So again, we had also, some of that award was for the Jones Act. Non-curative care. Yeah, so under the Jones Act. Palliative and cosmetic, or just palliative? Yeah, under the Jones Act, your damages for something like that can't go beyond curative. It can be palliative. How do we know that from the record? Was she specific about that, or are we simply to infer that? I think you can infer that by the nature of the claims. And what she was saying was that you're getting 9,000 or whatever it is in medical, any right you had to curative is gonna be covered by that, even though part of the medical was palliative and not curative. And so I think that's the way the court went with it. I think that's, you can infer from that. All right, thank you, Mr. Walsh. We'll hear rebuttal. Thank you. Thank you, Your Honor. First, I do wanna correct what I think is a serious problem with the reading of the record. The tenor of the argument that I just heard was that Dr. Fletcher got up on the witness stand and said, unless there's some advance in medical science, I've pretty much done what I can do here. Maybe I can do some cosmetic work. That is absolutely not what he said. He said, I'm giving her shots. She's going to therapy. She's getting better every time. Well, shots are palliative. Those injections are to reduce pain, aren't they, Your Honor? If you look through pages 471 to 482 of the joint appendix, that's Dr. Fletcher talking all about this. No, he was crystal clear, unequivocally clear that the therapy in combination with the shots was improving range of motion and function, not just pain, not just cosmetics. And the district court found that credible and made findings of fact consistent with his testimony on that? Yes, she found it credible. Show us where the district court did that. She just didn't mention it. She absolutely said Dr. Fletcher is the only physician and there was no... So she didn't make findings of fact consistent with his testimony. When I look appendix 33, page 27 of the footnote 14 says Dr. Fletcher's testimony is speculative as to whether it could be curative. He starts with the least complex treatment. He recommends therapy for pain and range of motion. Pigmentation or outside the scope of curative. He opined... Pain and physicality of the scar therapy might also be the scar therapy. No explanation how it treats symptoms or injury. Surgery always says there's a whole host of surgical... Options. Back therapy and surgery would improve. I would offer those with a hope she'll potentially... There is a reference to recommending hand... Proving plaintiff's pain and range of motion. So... I guess what you would say there's an internal inconsistency between saying it's speculative about curative and then the bit about therapy to improve pain and range. Here's what she means. Here's where she gets the speculative thing. He says, I wanna try one more shot. That's our sort of last hope. Other than that, we're gonna do the $16,000 surgery. Not after medicine advances. We're pretty much ready for surgery. I just wanna try one more shot. But then they ask, but don't you need to see her back because it's been a while now? And he says, sure, I'd need to see her back to make those determinations again because it's been several months. Because the employer had never turned on the tap saying you can go get this treatment. It's become a catch-22 where if she had just been permitted to go see Dr. Fletcher, she would be done with this by now. Said surgery is a potential operation for her in the future. He said that we wanna try one more shot. And if that... Because she's getting incremental gains every time we do it. But that we're gonna do one more shot. And then... All right, but we need to find that it was clearly erroneous. The footnote that Judge Beebe has just referenced, the court concluded that Fletcher did not opine as to any specific procedure or how soon plaintiff might meet it. Well, he was... Why was that clearly erroneous? That sentence in that footnote's doing a lot of work. Why was that clearly erroneous? Well, his full testimony is not in the footnote, but it is in the record. And if you read pages... I'm not talking about Fletcher's testimony. I'm talking about the district court's footnote, the sentence I just read. Tell us why that conclusion that she reached was clearly erroneous. Because what he's saying is, we're gonna try one more shot, and then we probably need surgery. I need to see her back. It's not speculative. He's not been allowed to see her at the employer's expense. I would have thought that your stronger... Topic sentence about speculation, but then there are specific statements about hand therapy. Curatives and footnotes. 13 and 14. Therapy. And that would seem to be part of cure. The references to surgery and to shots sound more speculative. Well, in that he says, we do the shot, then we do the therapy. We try and move it around, break up the scar tissue. We get range of motion going. We're gonna do one more of these, and then we probably need surgery. But we have to do the one more. The problem is she's never allowed to go to Dr. Fletcher at the employer's expense to go through that course of treatment. So now that's being held against us, we don't need future advances in medical technology or anything so speculative. He's ready to see her and do these options now, and they've been denied. So she should care. And there was no Jones Act, right? Even if you're right about that, and the district court's finding was clearly erroneous, don't we have to disaggregate the curative part of his treatment from the palliative part and the cosmetic part? Because he's talking about all three types. No, Your Honor. I mean, I think if we don't disaggregate it, then the law is compensating your client for palliative and cosmetic treatment. You'll find citations, and I believe it's in my reply brief, that say palliative care is absolutely compensable through the time of MMI, which is there has to be unequivocal evidence of MMI. So you do get pain medication. You know, when you break your leg and you get to the hospital, they do give you like Tylenol or something stronger for pain. That's palliative. You do get that through the time of MMI, which there's absolutely no evidence in the record that she's at MMI. This doctor wants to do one more injection and probably a $16,000 surgery, not wait for advances in medical technology. But I see that my time is up. All right. Thank you, Mr. Roberts. Thank you, Mr. Walsh. Court will take the matter under advisement.